Thomas A. Kimes *et al.*, Plaintiffs-Appellees, *v.* Shirley A. Rogers, Defendant-Appellant.

(No. 73-129; ▮▮▮▮▮▮▮)

Second District—February 14, 1975.

*Rehearing denied March 25, 1975.*

Hunter, Hunter & Madden, of Freeport, for appellant.

Kroeger, Burt & DeMik, of Freeport (Woodruff A. Burt, of counsel), for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of Stephenson County whereby it was declared that the plaintiffs, Thomas A. Kimes and Marion H. Kimes, were entitled to certain net proceeds from life insurance policies of Mike Rogers, the deceased husband of Shirley A. Rogers, the defendant.

The factual situation which led to litigation in the trial court and

further resulted in this appeal is as follows. Plaintiff Thomas A. Kimes for many years prior to September, 1969, was president of the H. A. Hillmer Company, an Illinois corporation. The outstanding stock of the corporation was owned by the plaintiffs, Thomas A. and Marion H. Kimes. A series of documents dated September 13, 1969, were executed by the plaintiffs and a Mike Rogers on November 19, 1969, and all of the documents related to the purchase by Rogers of the outstanding stock of the corporation. The documents executed were an agreement for the sale and purchase of the stock, a nonnegotiable installment note for $23,381.36 payable to Thomas A. Kimes, a nonnegotiable installment note for $17,089.16 payable to Marion H. Kimes, and a pledge agreement. In addition to these documents there was further executed on the same date a nonnegotiable installment note in the sum of $11,775 payable to Thomas A. Kimes by the H. A. Hillmer Company.

It should be further noted that in 1971 a note in the sum of $30,000 payable to Thomas A. Kimes was executed by Mike Rogers and that an additional agreement (referred to as the 1971 agreement) was entered into by the Kimes and Mike Rogers.

Prior to entering into any of the transactions pertaining to the purchase of the stock of the Hillmer Company, three policies of insurance were owned by Mike Rogers. Two policies were issued by the Minnesota Mutual Life Insurance Co. and one by Travelers Life Insurance Co. The insured under these policies was Mike Rogers, and the named beneficiary was his wife, the defendant Shirley A. Rogers.

Subsequent to the execution of the documents with the Kimes, assignments of the policies were made by Mike Rogers. The assignment of the Minnesota Mutual policies were in favor of Thomas A. Kimes and Marion H. Kimes "as his, their, or its interest may appear." The Travelers policy was assigned "to Thomas A. Kimes and Marion Kimes, as respective interest may appear as creditors, balance, if any, to Shirley A. Rogers, wife."

Mike Rogers died on April 13, 1972, and at the time of his death was not in default on any of the notes executed by him to the Kimes; however, his unpaid obligation to them was in excess of $60,000. Total insurance payable under the three policies of insurance carried by Mike Rogers was in the sum of $42,479.66.

Subsequent to the death of Mike Rogers, a controversy arose between the Kimes and Mrs. Rogers as to who was entitled to the life insurance proceeds. It is the Kimes' contention that the insurance proceeds were intended to secure the entire unpaid balance of the indebtedness represented by the notes executed by Mike Rogers. Conversely it is the contention of the defendant, Shirley Rogers, that the notes executed by her

husband do not provide for acceleration upon the event of the death of the promissor and that therefore the Kimes are entitled only to an amount of the insurance proceeds equal to the sum of any installments of principal and accrued interest delinquent as of the date of the death of her husband.

The contentions of the plaintiffs, Kimes, and the defendant, Shirley Rogers, present the paramount issue to be determined by this court; however, as we analyze the question presented we find that the issue is actually a narrower one, to-wit, whether the agreement entered into by the parties is ambiguous.

■■ It is a settled principle of law that if an agreement is plain and unambiguous there is no need for judicial construction. (See 17 Am. Jur. 2d *Contracts* § 241 (1964).) The defendant, Shirley Rogers, argues that the word "due" can be interpreted in more than one way, and hence the agreement between the parties is ambiguous and judicial construction is required. This agreement is indeed a tenuous one and if accepted might well give rise to a situation where virtually all agreements could arguably be termed ambiguous, since it is universally acknowledged by lexicographers that the English language is fraught with words suscepti- ble of dual meanings. We cannot accept the proposition that the possible dual interpretation of a word used in a contract results in the agreement being ambiguous per se.

We acknowledge that the word "due" is capable of different inter- pretations, but is its use in the instant case such as to make an agreement ambiguous? In order to determine this question, we must of necessity direct our attention to its usage in the documents executed by the Kimes and Mike Rogers.

In the pledge agreement executed by Mike Rogers in 1969 we find the following provision:

> "[Paragraph 1(c)] To carry life insurance on his life at all times in an amount not less than the aggregate unpaid balance on the notes due Pledgees. Each policy shall be endorsed to be payable to Pledgees to the extent of any unpaid balance due either of them."

We find no ambiguity in the contractual provisions contained in paragraph 1(c) of the pledge agreement. It is clear that Mike Rogers was to *carry* an amount of insurance not less than the total amount of money owed to the Kimes as of date of the agreement, which was November 19, 1969. (Emphasis supplied.) Secondly, the provision pro- vides that the insurance proceeds would be payable to the Kimes to the extent of any unpaid balance due either of them. To require a borrower to carry an amount of insurance equal to his total indebtedness but to

interpret the language "to be payable to pledgees to extent of any unpaid balance due either of them" to mean that proceeds would be used to pay only a payment of his indebtedness plus interest at the date of his death would be an unwarranted and inconsistent interpretation of the language used. If the argument of the defendant, Shirley Rogers, is accepted, then the insurance proceeds in excess of $40,000 would have served as security for only delinquent interest payments until November 1973, and further, in analyzing the various documents, no more than approximately $6,500 would have ever been payable to the Kimes prior to August, 1976. Under such a state of facts we are justified in asking, *"Ergo*, why should Mike Rogers have been required to carry an amount of insurance equal to the total of his indebtedness?" This question is unanswerable since it is abundantly clear to us that the interpretation called for by the defendant, Shirley Rogers, is a distorted one and cannot be sustained by the language employed.

Our conclusion is reinforced by an examination of the 1971 agreement which amended and supplemented the 1969 agreement. We deem the following language of the 1971 agreement especially enlightening and pertinent:

> "7. It is hereby acknowledged that Rogers has complied with the requirements of paragraph 1c of the pledge agreement of September 13, 1969. In as much as the parties hereto desire that the new loan of $30,000, to be made by Kimes, shall likewise be secured by life insurance, but recognize that the parties hereto do not, at the time of the execution of the agreement, know whether or not Rogers can purchase additional life insurance at normal rates and because the parties acknowledge that the purchase of insurance at rates over and above the normal rate could be prohibitive in cost to Rogers it is hereby agreed that the insurance policies previously pledged under the provisions of paragraph 1c of the agreement of September 13, 1969 shall also stand as *security* for the new loan of $30,000 and that in addition Rogers will attempt to procure new life insurance *so that the outstanding balance of the notes of September 13, 1969 and the new loan of $30,000 will be secured by life insurance* * * *." (Emphasis added.)

This provision dispels any doubt which might be lingering as to meaning of the word "due" in the 1969 pledge agreement. Considering both the 1969 and 1971 agreements together eliminates any possible claim of ambiguity. To hold otherwise would have the effect of rendering the word "security" in the 1971 agreement as a meaningless word.

The defendant, Shirley Rogers, in an effort to reinforce her argument that the agreements entered into were ambiguous, attempts to cloud the

issue by asserting that the primary security pledged to the Kimes was the stock of the Hillmer Company and not the insurance proceeds. We agree that the corporate stock was indeed pledged as security by Mike Rogers, but the agreements make it abundantly clear that security by proceeds from life insurance coverage was a vital factor in the transactions between the parties. That the Kimes may have elected to redeem the corporate stock in no way precludes them from relying upon the agreements which permitted them to seek payment of indebtedness to them from insurance proceeds. The defendant, Shirley Rogers, further quarrels with an able memorandum opinion drafted by the trial judge wherein it was found that the notes given by Mike Rogers to the Kimes contained prepayment privileges and that prepayment was constructively exercised by the assignment of the insurance. The defendant faults this finding of the trial court; however, we find it to be of no significance as to whether prepayment of the notes was or was not permitted. We are only concerned with the provisions of the agreements regarding insurance (no reference to insurance appears in any of the notes), and we have concluded that there is no ambiguity and that the trial court properly directed payment of the insurance proceeds to the Kimes.

■■ Lastly, the defendant, Shirley Rogers, claims that Mike Rogers is relieved of personal liability on the notes because the plaintiff, Thomas Kimes, placed the note given by the Hillmer Company to his sisters in judgment subsequent to the death of Mike Rogers. The defendant seeks to construe this action as an election on the part of Thomas Kimes to declare a forfeiture of his agreement with Mike Rogers and that all personal obligations of Mike Rogers and his successors in interest were retroactively terminated pursuant to the provisions of paragraph 6(F) of the pledge agreement. Without delving into the language of the pledge agreement relating to forfeiture, we deem it sufficient to note that even the defendant, Shirley Rogers, concedes that there was no express declaration of forfeiture by the Kimes, nor will the evidence adduced support a finding that there was a constructive forfeiture resulting from the acts of either of the Kimes. We deem it significant that Thomas A. Kimes, in obtaining judgment against the Hillmer Company, was acting in a fiduciary capacity and not in an individual capacity as the pledgee under the pledge agreement and hence was not availing himself of the forfeiture provisions of the pledge agreement .

For the reasons set forth, the judgment of the Circuit Court of Stephenson County is affirmed.

Affirmed.

STOUDER and DIXON, JJ., concur.